**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE | § |
| EXTRADITION OF | § |
| | § |
| RAMON ALIRE HURTADO. | § |

NO.  EP-13-MC-00166-ATB

## CERTIFICATE OF EXTRADITABILITY AND
## ORDER OF COMMITMENT

On July 29, 2013, an Extradition Hearing was held in the above-captioned case. Extraditee RAMON ALIRE HURTADO appeared with his Attorney, GARY HILL, and the United States Government was represented by Assistant United States Attorneys ROBERT ALMONTE and ADRIAN GALLEGOS.

After reviewing the evidence and exhibits,[1] and after considering the arguments of counsel, this Court finds that the United States ("the Government") has made its case, on behalf of the requesting nation, to support the extradition of RAMON ALIRE HURTADO.

## I.  PROCEDURAL BACKGROUND

On August 16, 1995, the Sixth Trial Court for Criminal Matters in the Judicial District of Bravos in Ciudad Juarez, in the State of Chihuahua, issued an arrest warrant for RAMON ALIRE HURTADO charging him with Homicide.  Pursuant to its obligations under the Treaty, the Government filed a complaint on December 18, 2007, seeking RAMON ALIRE

---

[1]At the Extradition Hearing, the Government entered into evidence the following two exhibits: the Declaration of Julie B. Martin and the United States Department of State's packet in support of the extradition ("Gov't. Ex. 1") and the properly certified Government of Mexico's Request for Extradition ("Gov't. Ex. 2").

HURTADO's arrest in order to ultimately extradite him.  On January 26, 2009, RAMON ALIRE HURTADO was certified extraditable by a United States Magistrate Judge and extradited to Mexico to stand trial on March 25, 2009.

On August 20, 2010, the Clerk of the Sixth Trial Court for Criminal Matters in the Judicial District of Bravos, Ciudad Juarez, Chihuahua, issued a ruling in Criminal Case Number 195/95 acquitting RAMON ALIRE HURTADO of the charge of Murder and ordering his immediate release.

On August 24, 2010, the Agent of the Office of the Public Prosecutor filed an appeal challenging RAMON ALIRE HURTADO's acquittal before the Regional First Chamber for Criminal Matters of the Supreme Court of Justice of the State of Chihuahua.

On January 31, 2011, the Justice of the First Regional Chamber for Criminal Matters of the Supreme Court of Justice of the State of Chihuahua tried RAMON ALIRE HURTADO in absentia and ruled that he was criminally responsible for Aggravated Homicide with Undue Advantage and Asphyxiation, and imposed a sentence of twenty-three years and nine months in accordance with Articles 192, 194 and 210, Sections I and IV of the Criminal Code of the State of Chihuahua, Mexico, in force at the time the crime took place.  The  court further ruled that RAMON ALIRE HURTADO had already served one year, eleven months and ten days of his sentence, and therefore, that a term of twenty-one years, nine months and twenty days remained on his sentence.

In compliance with the ruling issued by the First Regional Chamber for Criminal Matters of the Supreme Court of the State of Chihuahua, the Sixth Trial Court for Criminal Matters in

the Judicial District of Bravos, Ciudad Juarez, Chihuahua, issued an arrest warrant against RAMON ALIRE HURTADO on February 18, 2011, for the crime of Aggravated Homicide with Undue Advantage and Asphyxiation.

On December 4, 2012, the United Mexican States ("Mexico") submitted Diplomatic Note No. 07579 to the United States Government formally requesting the extradition of RAMON ALIRE HURTADO. (Gov't Ex. 1.)  The Government, in accordance with its obligations under the Treaty, now seeks to extradite RAMON ALIRE HURTADO to Mexico to serve the remainder of his sentence.  On May 15, 2013, the Government filed its Complaint for Extradition for the Execution of a Sentence (18 U.S.C. § 3184) as to RAMON ALIRE HURTADO. (Doc 1.)  On May 15, 2013, the Court ordered a warrant for the arrest of RAMON ALIRE HURTADO, and he was arrested on June 5, 2013.  On June 25, 2013, RAMON ALIRE HURTADO waived his Identity Hearing and Detention Hearing.  On July 2, 2013, the Government filed a Memorandum of Law in Support of Extradition. (Doc. 21.)

## II.  LEGAL STANDARD

This is a proceeding under 18 U.S.C. § 3184 pursuant to a request by Mexico through the Government of the United States for the extradition from the United States to Mexico of RAMON ALIRE HURTADO under the provisions of the Extradition Treaty between the United States of America and the United Mexican States of May 4, 1978 ("the Treaty"). (Gov't Ex. 1.)

Foreign governments requesting the extradition of a fugitive must file a complaint under oath. *In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 691 (W.D. Tex. 2003).  Upon such a complaint, a United States justice, judge or authorized magistrate judge may issue an arrest warrant for the requested fugitive. 18 U.S.C. § 3184.   The complaint must provide

Case 3:13-mc-00166-ATB   Document 24   Filed 08/21/13   Page 4 of 11

sufficient information as to inform the fugitive of the charges against him. "While it is not necessary to charge the offense with the particularity of an indictment, it should be sufficiently explicit to inform the accused of the nature of the charge." *In re Wise*, 168 F.Supp. 366, 369 (S.D.Tex.1957). It is implicit in all of the cases announcing the rule that the complaint need not meet the requirements of an indictment. *Grin v. Shine*, 187 U.S. 181, 189, 23 S. Ct. 98, 47 L. Ed. 130 (1902).

Pursuant to 18 U.S.C. § 3190, the principal United States diplomatic or consular officer stationed in the requesting country must certify that country's documents in support of extradition. Upon the requisite certification, the documents are admissible for the purposes of an extradition hearing. *Collins v. Loisel*, 259 U.S. 309, 313, 42 S.Ct. 469, 66 L.Ed. 956 (1922). Article 10 of the Treaty provides the extradition procedure and lists the required supporting documents.

In addition, Article 2 of the Treaty requires that the extraditable offense be a criminal act in both the requesting country and the requested country, and that it be punishable by imprisonment, the maximum of which shall not be less than one year. Treaty, Art. 2(3). This is known as the dual criminality requirement. *Loisel*, 259 U.S. at 312. The Court must also determine "whether there [is] any evidence warranting the finding that there [is a] reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *Escobedo v. United States*, 623 F.2d 1098, 1101 (5th Cir.1980) (quoting *Fernandez*, 268 U.S. at 312), *cert. denied*, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980). Finally, in the case of an extraditee who has already been convicted, if less than six months remain on his sentence, he is not extraditable. Treaty, Art. 2(2).

3:13-MC-00166                            4

If the Court determines that these requisite elements have been met, the findings are incorporated into a Certificate of Extraditability.  The certificate is forwarded to the Department of State for final determination.

## III. ARGUMENT

RAMON ALIRE HURTADO argues that he should not be extradited because Mexico violated the Rule of Specialty following his previous extradition.  The Rule of Specialty states that an extraditee can be tried by the requesting country only for the offenses for which he has been delivered and can be sentenced to no more time than the maximum of the original offense. Treaty, Art. 17. *See also United States v. Rauscher*, 119 U.S. 407, 422–23, 7 S.Ct. 234, 30 L.Ed. 425 (1886); *and United States v. Kaufman*, 858 F.2d 994, 1007 (5th Cir. 1988).  RAMON ALIRE HURTADO argues that he was convicted in absentia for the offense of Aggravated Homicide with Undue Advantage and Asphyxiation and sentenced to twenty-three years and nine months, yet he was only originally extradited for the offense of Homicide for which the maximum sentence was twenty years.

The Government in its Memorandum of Law Regarding Article 17, Rule of Specialty[2] argues that RAMON ALIRE HURTADO lacks standing to assert the Rule of Specialty in his own defense.  (Doc. 23.)  Citing Fifth Circuit precedent, the Government states that a criminal defendant has no standing to argue the Rule of Specialty when the asylum state has failed to raise an objection to the proceeding.  (*Id.* at 3.)

The precedent, however, is not as clear as the Government makes it appear.  The Circuits are split as to whether an individual defendant has standing to raise a Rule of Specialty violation.

---

[2] Both parties were given an opportunity to provide a brief to the Court on the Rule of Specialty.

*Compare United States v. Levy*, 905 F.2d 326, 328 n.1 (10th Cir. 1990) (relying on *Rauscher* for the proposition that defendant had unqualified "standing to raise [a Rule of Specialty challenge]") *with United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 168 (3d Cir. 1997) ("Had [petitioner] brought suit invoking the [extradition] treaty or the Rule of Specialty, she would lack standing.").

The Fifth Circuit, while recognizing the split, has thus far not expressed an opinion as to whether a defendant can assert the privilege. *See United States v. Kaufman*, 858 F.2d 994, 1009 n. 5 (5th Cir. 1988) ("[W]e find it unnecessary to address the government's contention that the [defendants] lack standing to raise the alleged treaty violation as a bar to personal jurisdiction[.]"); *United States v. Angleton*, 2006 WL 2828657, at *4 n.12 (5th Cir. 2006) ("It is still an open question in this circuit whether a criminal defendant has standing to assert the rule of specialty."); *United States v. LeBaron*, 156 F.3d 621, 627 (5th Cir. 1998) ("Whether [defendant] has standing to raise the doctrine of specialty is an undecided issue in this circuit."); *United States v. Miro*, 29 F.3d 194, 200 n.5 (5th Cir. 1994) (while considering a challenge under the Rule of Specialty, the court questioned whether defendant had standing to raise the issue since Spain had not objected). *But see United States v. Quirox*, 2005 WL 1427692, at * 3 n.1 (5th Cir. 2005) ("This Court's decision in *U.S. v. Kaufman*, 874 F.2d 242, 243 (5th Cir. 1989), precludes a criminal defendant from arguing the Specialty Doctrine when the asylum state[] . . . has failed to raise an objection to the proceeding.").

This Court need not step into the shoes of the Fifth Circuit and answer the question of whether the defendant has standing. As in *Kaufman* and *LeBaron*, the Court concludes that even assuming *arguendo* that RAMON ALIRE HURTADO is entitled to raise the Rule of Specialty,

his argument fails on the merits.

The rule of specialty applies primarily when a defendant is prosecuted by the requesting country for different substantive offenses than those for which consent has been given. *LeBaron*, 156 F.3d at 627. *See also Fiocconi v. Attorney General of United States*, 462 F.2d 475, 481 (2d Cir.1972) (stating that "in the absence of any affirmative protest from [the requested country]," the Second Circuit did "not believe that [the] Government would regard the prosecution of [the defendants] for subsequent offenses of the same character as the crime for which they were extradited as a breach of faith by the United States."

RAMON ALIRE HURTADO seeks to use the Rule of Specialty to contest his initial extradition as a bar to this extradition proceeding. However, the first extradition is not before this Court. This extradition is a separate process from the one that RAMON ALIRE HURTADO faced in 2009. *See Hooker v. Klein*, 573 F.2d 1360, 1366 (9th Cir.), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978) (only limitation on number of extradition requests is that each such request must be based on the Government's good faith determination "that extradition is warranted").

Even if a violation of the Rule of Specialty in the first extradition could act as a bar in the immediate extradition, there is no violation if the extraditing country would not consider the acts as independent from those for which the defendant was originally extradited. RAMON ALIRE HURTADO was originally extradited for the offense of Homicide. He was subsequently convicted of Aggravated Homicide with Undue Advantage and Asphyxiation. This is a crime of similar character and arising from the same set of facts.

As stated by the Fifth Circuit in *LeBaron*, "[t]he appropriate test for a violation of

specialty is whether the extraditing country would consider the acts for which the defendant was prosecuted as independent from those for which he was extradited." *Id.* (quoting *United States v. Andonian*, 29 F.3d 1432, 1435 (9th Cir.1994) (internal quotations omitted). RAMON ALIRE HURTADO's protest fails the test laid out in *LeBaron*.

Morever, even giving RAMON ALIRE HURTADO every benefit of the doubt, and assuming that a violation of the Rule of Specialty actually occurred as alleged by the defendant, a defendant may only assert a violation of the Rule of Specialty in the requesting nation's court system. *See Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2nd Cir. 1973), *cert. dismissed*, 414 U.S. 884 (1973). The Supreme Court's decision in *Rauscher* adopted the Rule of Specialty as domestic law, thereby binding United States courts to try individuals for only those crimes listed in the extradition agreement. *See Rauscher*, 119 U.S 407. In *Shapiro*, the Second Circuit found that this case law only applies when the United States is the requesting country. *Shapiro*, 478 F.2d 894 at 906.

The *Shapiro* court identified a number of reasons as to why it is impracticable to apply the same Rule of Specialty standards in cases where the United States acts as the requested country. Foremost, the power to extradite an individual from the United States belongs to the executive, rather than the judicial branch of the government. *Id.*; *see also Escobedo*, 623 F.2d at 1105 ("The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs."). In such a situation, the only role that the courts play concerns an initial determination as to the extraditability of particular offenses. *Shapiro*, 478 F.2d at 906.

The Rule of Non-Inquiry prohibits a court from considering the fairness of the

proceedings that await the accused in the requesting country regardless of the lack of substantial due process or human rights conditions a person will face in the requesting country. *See Sandhu v. Bransom*, 932 F. Supp. 822, 828 (N.D. Tex. 1996); *see also Escobedo*, 623 F.2d at 1105 (citing *Sindona v. Grant*, 619 F.2d 167, 176 (2nd Cir.1980). The Rule of Non-Inquiry is based on the idea that "[w]e are bound by the existence of an extradition treaty to assume that the trial will be fair" and that as long as probable cause is established, "good faith to the demanding government requires [the respondent's] surrender." *Glucksman v. Henkel*, 221 U.S. 508, 512, 31 S.Ct. 704, 55 L.Ed. 830 (1911).

The executive branch, through the Secretary of State, is the final arbiter of whether an individual will be detained in the United States and delivered to the requesting foreign country. 18 U.S.C. § 3181(a). The Secretary of State, however, has the duty of protesting if the requesting country violates the limitations imposed on the extradition by the United States through the extradition agreement. *Shapiro*, 478 F.2d at 906.

## IV. FINDINGS AND CERTIFICATION

The Government has provided this Court with a true and correct copy of the Treaty. (Gov't. Ex. 1.) RAMON ALIRE HURTADO was found criminally responsible for having committed the crime of Aggravated Homicide with Undue Advantage and Asphyxiation which is an extraditable offense under Article II, paragraph 1. and item 1 of the list of offenses comprising the Appendix to the Treaty. Pursuant to the Treaty, Mexico submitted a formal certified request through diplomatic channels for the extradition of RAMON ALIRE HURTADO. (Gov't. Ex. 2.) The request included a statement of the facts of the case, and all of the required descriptions of the offense. (Gov't. Ex. 2.) The request includes a certified copy of

the judgment of conviction imposed by a court in Mexico.  (Gov't. Ex. 2.)   The Court confirms

that more than six months remain to be served on the remainder of the sentence.  The evidence

shows that the RAMON ALIRE HURTADO before this Court is the same person convicted in

Mexico.

This Court also finds there is "reasonable ground to believe the accused guilty," and,

therefore, finds there is probable cause to believe that RAMON ALIRE HURTADO is guilty of

the offense for which he was convicted in Mexico. *See Ludecke v. U.S. Marshal*, 15 F.3d 496,

497 (5th Cir. 1994).  Pursuant to 18 U .S.C. § 3184, the Court finds the evidence "sufficient to

sustain the charge under the provisions of the proper treaty or convention."  Further, the Court

finds that under the principle of "dual criminality," the act alleged to have been committed by

RAMON ALIRE HURTADO is punishable as criminal conduct in Mexico, and the same act

would be punishable under the criminal laws of the United States.

This Court certifies that RAMON ALIRE HURTADO is extraditable under the

Extradition Treaty in force between the United States of America and the United States Mexican

States.

**IT IS HEREBY ORDERED** that the Clerk forward a certified copy of the Certificate of

Extraditability and Order of Commitment, together with all formal extradition documents

received into evidence, a certified copy of the evidence admitted at the hearing, all memoranda

of law filed on the issue of extradition, and all orders of the Court, to the Secretary of State of

the United States in accordance with 18 U.S.C. § 3184.

The Court **FURTHER ORDERS** that RAMON ALIRE HURTADO be committed to the

custody of the United States Marshal pending final disposition of this matter by the Secretary of

State.

      **SIGNED** and **ENTERED** on August 23rd, 2013.

                              ANNE T. BERTON
                              UNITED STATES MAGISTRATE JUDGE